02-11-515-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00515-CV

 

 


 
 
 In the Interest of G.P., A Child
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 323rd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
K.P. appeals from the trial court’s order terminating her parental rights to
her son G.P.  In three issues, she contends that the evidence is legally and
factually insufficient to support the trial court’s endangerment findings and
factually insufficient to support the trial court’s best interest finding.[2] 
Because we hold that the evidence is legally and factually sufficient to
support those findings, we affirm the trial court’s judgment.

In
her first two issues, Appellant contends that the evidence is legally and
factually insufficient to support the trial court’s endangerment findings under
subsections (D) and (E).[3]

In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed under
subsection (1) of the statute and must also prove that termination is in the
best interest of the child.[4] 
Both elements must be established; termination may not be based solely on the
best interest of the child as determined by the trier of fact.[5]

Termination
decisions must be supported by clear and convincing evidence.[6]  Evidence is clear and
convincing if it “will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established.”[7]  Due process
demands this heightened standard because termination results in permanent,
irrevocable changes for the parent and child.[8]

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.[9]  We review all the
evidence in the light most favorable to the finding and judgment.[10]  We resolve any
disputed facts in favor of the finding if a reasonable factfinder could have
done so.[11] 
We disregard all evidence that a reasonable factfinder could have disbelieved.[12]  We consider
undisputed evidence even if it is contrary to the finding.[13]  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.[14]

In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.[15]  We determine
whether, on the entire record, a factfinder could reasonably form a firm
conviction or belief that the parent violated subsections (D) or (E) of section
161.001(1) and that the termination of the parent-child relationship would be
in the best interest of the child.[16] 
If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the challenged finding is so
significant that a factfinder could not reasonably have formed a firm belief or
conviction in the truth of its finding, then the evidence is factually
insufficient.[17]

As
we have explained in a similar case,

Endangerment
means to expose to loss or injury, to jeopardize.  The trial court may order
termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Under subsection (D), it is necessary to
examine evidence related to the environment of the child to determine if the
environment was the source of endangerment to the child’s physical or emotional
well-being.  Conduct of a parent in the home can create an environment that
endangers the physical and emotional well-being of a child.

. . . . 
Under subsection (E), the relevant inquiry is whether evidence exists that the
endangerment of the child’s physical or emotional well-being was the direct
result of the parent’s conduct, including acts, omissions, and failures to
act.  Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.

To
support a finding of endangerment, the parent’s conduct does not necessarily
have to be directed at the child, and the child is not required to suffer
injury.  The specific danger to the child’s well-being may be inferred from
parental misconduct alone, and to determine whether termination is necessary,
courts may look to parental conduct both before and after the child’s
birth . . . .  As a general rule, conduct that subjects a
child to a life of uncertainty and instability endangers the child’s physical
and emotional well-being.[18]

Additionally,
a parent’s mental state may be considered in determining whether a child is
endangered if that mental state allows the parent to engage in conduct
jeopardizing the child’s physical or emotional well-being.[19]  Finally, even if a parent
makes dramatic improvements before trial, “evidence of improved conduct,
especially of short-duration, does not conclusively negate the probative value
of a long history of . . . irresponsible choices.”[20]

The
evidence shows that G.P. was born in January 2011 with methamphetamine and amphetamine
in his system.  He was removed from Appellant by the Texas Department of Family
and Protective Services (TDFPS) before leaving the hospital.  The evidence
further shows that Appellant had used methamphetamine since May 2010 and had
last used methamphetamine three days before G.P. was born.  Appellant told the Child
Protective Services (CPS) investigator that she had known that she was pregnant
when she used drugs but that she had planned to abort the pregnancy or give the
child up for adoption.  The child’s birth father, J.L.H., who does not
challenge the termination of his parental rights, told the CPS conservatorship
worker that one of the reasons he ended his relationship with Appellant was
that she would not stop using drugs during the pregnancy.

Appellant
also told the CPS investigator that her five older children were being raised
by family members at least in part because of her drug use.

Appellant
continued to use methamphetamine regularly after G.P.’s removal.  She told the CPS
conservatorship worker in April 2011 that she was “a drug user” and “proud of
it.”  No evidence shows any attempt by Appellant to stop abusing illegal drugs
or to get treatment for her addiction, though she did admit that she had a drug
problem and, on the day before the December 6, 2011 trial, told the CPS
conservatorship worker that she would like to get clean and sober.

At
the time of trial, Appellant was in a federal detention center after pleading
guilty in a federal criminal case involving conspiracy to distribute
marijuana.  Additionally, there was evidence that even before her
incarceration, Appellant did not have stable housing.

Reviewing
the evidence in the light most favorable to the verdict, we hold that the
evidence is legally sufficient to support the trial court’s endangerment
findings.  Further, reviewing all the evidence and giving due deference to the
trial court’s findings, we hold that the evidence is factually sufficient to
support the trial court’s endangerment findings.  We overrule Appellant’s first
and second issues.

In
her third issue, Appellant contends that the evidence is factually insufficient
to support the trial court’s finding that termination of her parental rights is
in G.P.’s best interest.  There is a strong presumption that keeping a child
with a parent is in the child’s best interest.[21] 
Prompt and permanent placement of the child in a safe environment is also
presumed to be in the child’s best interest.[22] 
The following factors should be considered in evaluating the parent’s willingness
and ability to provide the child with a safe environment:

(1) the child’s age
and physical and mental vulnerabilities;

(2) the frequency and
nature of out-of-home placements;

(3) the magnitude,
frequency, and circumstances of the harm to the child;

(4) whether the child
has been the victim of repeated harm after the initial report and intervention
by the department or other agency;

(5) whether the child
is fearful of living in or returning to the child’s home;

(6) the results of
psychiatric, psychological, or developmental evaluations of the child, the
child’s parents, other family members, or others who have access to the child’s
home;

(7) whether there is
a history of abusive or assaultive conduct by the child’s family or others who
have access to the child’s home;

(8) whether there is
a history of substance abuse by the child’s family or others who have access to
the child’s home;

(9) whether the
perpetrator of the harm to the child is identified;

(10) the willingness
and ability of the child’s family to seek out, accept, and complete counseling
services and to cooperate with and facilitate an appropriate agency’s close
supervision;

(11) the willingness
and ability of the child’s family to effect positive environmental and personal
changes within a reasonable period of time;

(12) whether the
child’s family demonstrates adequate parenting skills, including providing the
child and other children under the family’s care with:

(A) minimally adequate health and
nutritional care;

(B) care, nurturance, and appropriate discipline
consistent with the child’s physical and psychological development;

(C) guidance and supervision consistent with the child’s
safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even
though the violence may not be directed at the child; and

(F) an understanding of the child’s needs and
capabilities; and

(13) whether an
adequate social support system consisting of an extended family and friends is
available to the child.[23]

Other,
nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:

(A)     the desires
of the child;

(B)     the
emotional and physical needs of the child now and in the future;

(C)     the
emotional and physical danger to the child now and in the future;

(D)     the
parental abilities of the individuals seeking custody;

(E)     the
programs available to assist these individuals to promote the best interest of
the child;

(F)     the
plans for the child by these individuals or by the agency seeking custody;

(G)     the
stability of the home or proposed placement;

(H)     the acts or
omissions of the parent which may indicate that the existing parent-child
relationship is not a proper one; and

(I)          
any
excuse for the acts or omissions of the parent.[24]

These
factors are not exhaustive; some listed factors may be inapplicable to some
cases; other factors not on the list may also be considered when appropriate.[25]  Furthermore,
undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child.[26]  On the other
hand, the presence of scant evidence relevant to each factor will not support
such a finding.[27]

In
addition to the evidence and findings discussed above, the record contains the
following evidence.  Appellant did not complete any services on her service
plan.  That is, she did not complete parenting classes, she did not stay
drug-free or “clean and sober,” she did not participate in drug treatment, she
did not maintain regular contact with her caseworker, and she did not visit
consistently with G.P. even before her August 2011 incarceration.  The CPS
conservatorship worker testified that termination of Appellant’s parental
rights was in G.P.’s best interest because Appellant had not demonstrated that
she could provide a safe home for him or satisfy his basic and emotional needs
and keep him safe.

At
the time of trial, G.P. was developmentally on target, healthy, and happy.  His
foster parents had a lot of experience with children and had undergone
extensive training in child development and child nutrition.  The CPS
conservatorship worker testified that G.P.’s foster parents’ home is free of
safety hazards, the parents both have careers, they do not use drugs, and they
have a large family who wishes the best for G.P.  TDFPS’s permanency plan for
G.P. and his foster parents’ intention, pending termination, is adoption.

Applying
the appropriate standard of review, we hold that the evidence is factually
sufficient to support the best interest finding.  We overrule Appellant’s third
issue.

Having
overruled Appellant’s three issues, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DELIVERED:  July 5, 2012

 









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code
Ann. § 161.001(1)(D)–(E), (2) (West Supp. 2011).





[3]See id. §
161.001(1)(D)–(E).





[4]Id. § 161.001;
In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).





[5]Tex. Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re D.T., 34
S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).





[6]Tex. Fam. Code Ann. § 161.001;
see also id. § 161.206(a) (West 2008).





[7]Id. § 101.007
(West 2008).





[8]In re J.F.C., 96
S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243 S.W.3d 611,
616 (Tex. 2007) (contrasting standards for termination and modification).





[9]In re J.P.B., 180
S.W.3d 570, 573 (Tex. 2005).





[10]Id.





[11]Id.





[12]Id.





[13]Id.





[14]Id.





[15]In re H.R.M., 209
S.W.3d 105, 108 (Tex. 2006).





[16]Tex. Fam. Code Ann. § 161.001;
In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).





[17]H.R.M., 209 S.W.3d
at 108.





[18]In re J.W., No.
02-08-00211-CV, 2009 WL 806865, at *4 (Tex. App.—Fort Worth Mar. 26, 2009, no
pet.) (mem. op.) (citations omitted).





[19]In re M.E.-M.N.,
342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).





[20]In re J.O.A., 283
S.W.3d 336, 346 (Tex. 2009).





[21]In re R.R., 209
S.W.3d 112, 116 (Tex. 2006).





[22]Tex. Fam. Code Ann. § 263.307(a)
(West 2008).





[23]Id. § 263.307(b);
R.R., 209 S.W.3d at 116.





[24]Holley v. Adams,
544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted).





[25]C.H., 89 S.W.3d at
27.





[26]Id.





[27]Id.